## PIERRE DOMEC *v.* ABEL STEARNS, TOMAS A. SANCHEZ, AND JOHN PARROTT.

ENJOINING SALE OF PERSONAL PROPERTY UNDER EXECUTION.—A prior attaching creditor, whose attachment has been levied on the personal property of the defendant, cannot, after the recovery of a judgment, be enjoined from selling the property attached, under execution, at the suit of a junior attaching creditor, unless, for a sufficient consideration, he has bound himself to the junior attaching creditor not to do so, but to pursue some other course, to depart from which would result in irreparable mischief to the plaintiff.

EXECUTION ISSUED ON SATISFIED JUDGMENT.—If, after a judgment recovered by an attaching creditor has been satisfied, he is proceeding to sell attached property under execution, the defendant in the execution may move to quash the writ, and need not go into equity for relief.

APPEAL from the District Court, First Judicial District, Los Angeles County.

The defendants, Sanchez and Parrott, appealed.
The other facts are stated in the opinion of the Court.

*H. & C. McAllister,* for Appellant, Parrott.

That Parrott's debt is in judgment, and that his attachment was prior to all the other attachments, is affirmatively pleaded. Prior to the execution of the agreement, then, his right to have the property sold under execution was perfect, and the agreement was simply for the benefit of Stearns, because all his creditors, according to plaintiff's own showing, were fully protected, and had nothing to gain by the arrangement. Now, if Parrott became the trustee for Stearns of certain property, to be used in a particular way and for specified purposes, and violated his trust, then, certainly, Stearns would have the right to complain, and might file his bill to remove the fraudulent trustee, and for other relief.

If Stearns had had an amount of property barely sufficient to satisfy the claims of his creditors, and an agreement had been made with one creditor for the common benefit, and that creditor himself being unable to respond in damages, had sacrificed, or wasted, or entered into a fraudulent conspiracy with others to appropriate the property, then there might be some legal reason for the other creditors to ask for the protection of a Court of equity. But, where all the creditors have to do to realize the amounts due them is merely to issue execution, and where an agreement has been made for the exclusive benefit of the debtor, relating only to a particular part of his property, and temporarily exempting that part alone from the enforcement of sundry attachment liens, it is a pretty clear case of presumption, both in a legal and moral sense, for one of the creditors, who has sustained no damage, and by his own statement can sustain none, no matter what becomes of the property included in the arrangement, to thrust himself forward as the unsolicited champion of the debtor, and beat the air in search of materials out of which to frame a case.

The suit cannot be sustained upon the theory that it is brought to remove a fraudulent trustee, because the plaintiff has no power to bring such a suit, his averments are insufficient, and he asks for no such relief. Neither can it be supported as a suit for an account, because Parrott and Sanchez were not liable to account to plaintiff, and, according to the bill, had no money in their hands not applicable to Parrott's judgment. And if Parrott had derived money from the sale of the property, over and above the amount of his judgment, to which, in equity and good conscience, plaintiff was entitled, his remedy would have been an action for money had and received. (*Anthony* v. *Dunlap*, 8 Cal. 26 ; *Ricketts* v. *Johnson et al.* Ib. 71 ; *Chipman* v. *Hibbard*, Ib. 271 ; *Phelan* v. *Smith*, Ib. 521 ; *Gorham et al.* v. *Toomey et al.* 9 Cal. 77 ; *Whefelder et al.* v. *Levy et al.* 9 Cal. 614 ; and *Comstock* v. *Clemens*, 19 Cal. 77.)

*George Cadwalader*, for Appellant, Sanchez.

With the Sheriff the question is one of paramount allegiance, and in his judgment, as well as that of his counsel, he must obey the order of the Twelfth District Court, and not the subsequent conflicting order of the First District Court, and that if he does not, and injury results, he is liable on his official bond.

The power of one Court of co-ordinate jurisdiction to restrain the execution of the process of another Court has been the subject of judicial inquiry, and the general determination has been that the power did not exist; eight decisions of this Court declare such a result. The only exception appears to be where the process or proceedings sought to be restrained issue from a Court which has not the power to grant the relief asked. In one of these cases, 9 Cal. 614, it was said:

"If, therefore, a bill were filed in the District Court of Sacramento, to restrain proceedings in the District Court of Yuba, in a case where the latter Court could as well give the relief sought, the former Court, of its own motion, should dismiss the bill."

*Volney E. Howard*, and *Benjamin Hayes*, for Respondent.

If the Sheriff had been acting under regular process, it would be no authority to sell after the judgment had been satisfied by sufficient sales. (*Wood* v. *Colvin*, 2 Hill, 566.) The reception of the money by the plaintiff in execution, or his agents, was the extinction of the power to sell. (*Sherman* v. *Boyce*, 15 I. R. 444; *Swan* v. *Saddlemire*, 8 Wendell, 676.)

If there were any errors prior to the consent order, they were cured by the consent in that order. And the proof showing that money sufficient to pay the judgment, and an excess of ten thousand dollars, had been made, under the order; it was a proper case for an injunction and receiver, especially as the receiver was ordered to sell, and to pay any balance that might be ascertained by the reference to be due to Par-

rott, or the Sheriff, on account of fees, and that in the absence of a showing that anything was due when the property was ordered into the hands of the receiver, and when there was a showing of special reasons why Sanchez should not longer be continued in the possession of the property. When it is against conscience to execute the judgment, a Court of equity will enjoin. (2 Story's Eq. Secs. 886, 887.)

The case showed sufficient evidence of danger of loss and a waste of the property, which would defeat the rights of creditors to require the appointment of a receiver. (2 Story's Eq. Secs. 827, 831, 837 ; *Hill* v. *Taylor*, 22 Cal. 191.)


By the Court, SANDERSON, J. :

This is an action brought by Domec, a judgment creditor of the defendant Stearns, to restrain John Parrott, also a judgment creditor of Stearns, John G. Downey, the attorney in fact of Parrott, and Thomas A. Sanchez, Sheriff of Los Angeles County, from selling, under an execution in favor of Parrott, a large amount of personal property in Los Angeles County belonging to Stearns, also to obtain the appointment of a receiver to take charge of all the real and personal estate of Stearns and to sell at private sale the personal property and pay the proceeds into Court for the benefit of the plaintiff and other judgment creditors of Stearns named in the bill, and that such proceeds, together with the rents and issues of the real estate, be applied upon the several judgments against Stearns in the order of their priority, and that Parrott and Sanchez render an account of certain moneys alleged to have been received by them. The facts upon which this relief is sought, so far as we deem it important to state them, are substantially as follows :

On the 15th of August, 1864, the defendant, Sanchez, levied an attachment upon the personal property in question at the suit of Parrott for about thirty-seven thousand dollars. On the next day Sanchez levied an attachment on the same property in favor of the plaintiff for the sum of six thousand two

hundred and eighty-six dollars and eighty-six cents. Subsequently other attachments were levied upon the same property by Sanchez; one in favor of George E. Howard, for twelve thousand and twenty-five dollars, and one in favor of Phelps, Dodge & Co., for fifteen thousand and twenty-one dollars and thirty-seven cents. In all of these cases judgments were subsequently obtained against Stearns. Parrott and Howard sued in the Fourth District, Phelps, Dodge & Co. in the Twelfth District, and plaintiff in the First District, in which district the plaintiff also brought the present action.

On the 11th of October, 1864, Stearns executed a mortgage to Parrott of the attached property, to which the other judgment creditors assented. There is some controversy as to whether this mortgage contract was ever consummated, but for the purposes of this opinion we shall assume that it was. This mortgage was given to secure the payment of Parrott's judgment and in default of payment on or before the 11th of April, 1865, it was therein provided that Parrott should have the power to sell in the manner provided in a power of attorney annexed to and constituting a part of the instrument, and account for any overplus to Stearns.

The instrument then proceeds to state that it is accompanied by a delivery of possession of the property and is given in consideration of the forbearance of Parrott to immediately proceed to sell under his execution and to give him full power and authority to realize his judgment by a sale of the property in whatever manner he may deem most advantageous, but in no manner to affect the lien of his judgment upon any other property or estate of Stearns.

Then follows the appointment of Parrott as attorney in fact with full power to sell, without notice to Stearns, at public or private sale, before or after the 11th of April, 1865, in lots or parcels to suit himself, he agreeing not to sell forthwith under execution, but to dispose of the property in the manner aforesaid to the best advantage and apply the proceeds to the expense of keeping and selling and the payment of his judgment and account, and pay over to Stearns any surplus which

may be coming to him.    The instrument contains other cove-
nants, but they are not material to the present purpose.

Next follows the written consent, to the foregoing agreement,
of the plaintiff, Howard, and Phelps, Dodge & Co., in which
they say that they assent thereto in consideration of the cove-
nants and agreements to be performed by Parrott, and they
agree with Parrott to hold their attachments in subordination
to the mortgage, and not to run their executions against the
mortgage property until the 11th day of April, 1865 ; but
reserve the right to run them against any other property
belonging to Stearns, and to garnishee any surplus which may
remain in Parrott's hands after he has satisfied his own judg-
ment.

After the 11th day of April, 1865, Parrott was proceeding
to sell under execution in fraud of the plaintiff's rights under
the foregoing instrument, as alleged by him, which was the
immediate cause of the present action.

For the purpose of showing how the plaintiff may be
injured by the course about being pursued by Parrott, the
bill further alleges that the real estate of Stearns is heavily
encumbered, and the only means upon which the plaintiff and
Stearns can reasonably rely for the payment of the aforesaid
judgments against him is the personal property in question,
and that a forced sale under an execution will result in a great
sacrifice.    It is also alleged that Sanchez has not property
sufficient nor is his official bond sufficient to answer for the
damages which will result from such a sale ; but nothing is
said as to the responsibility of Parrott.    The bill also, in a
very general way, alleges fraud and mismanagement on the
part of Parrott and alleges that he had had opportunities to
sell a sufficient amount of the property to pay off his own and
the other judgments, but neglected to do so, and that he has
already received some fourteen thousand dollars on his judg-
ment.    It is further alleged that the personal property in
question is of the value of one hundred thousand dollars, and
that Parrott seeks a forced sale on short notice with a view to
speculative ends, etc.

Upon this complaint, accompanied by an affidavit of one C. R. Johnson, from which it appears that the entire indebtedness of Stearns does not exceed the sum of one hundred and eighty-five thousand dollars, while his entire estate, real and personal, is of the value of five hundred and twenty-three thousand dollars, an *ex parte* application for an injunction, and the appointment of a receiver was made and granted on the 14th of April, 1865, at chambers. On the following day the defendants moved that this order be vacated and annulled, supporting their motion by affidavits and documentary evidence contradicting the averments of the bill. Counter affidavits and documents were introduced by the plaintiff. On the 18th of April an order was entered by the consent of all parties to the effect that Sanchez should proceed to sell as speedily as might be advantageous to the interests of the parties concerned, at private sale, in quantities to suit, at a certain minimum price, or less, if Stearns should consent, sufficient to satisfy the judgments mentioned in the complaint, and apply the proceeds to the payment thereof in the order of their priority as fast as the same should be realized, and that Stearns be allowed to designate the property to be sold as in case of sale under execution.

On the 29th day of May following the plaintiff served a notice on the defendants to produce and file in Court, on their motion to dissolve the injunction still pending, on the 31st of the same month a bill of particulars, showing fully all their transactions in the premises; first, from the 1st day of January, 1864, until the 1st day of January, 1865, and second, from the last named day until the said 31st of May.

On the 3d of June following, plaintiff moved the Court to take up and dispose of the motion of the defendants to dissolve the injunction and vacate the appointment of a receiver. At the same time a notice was served on counsel for Parrott and Sanchez by counsel for Stearns to the effect that at the hearing of their motion on that day to dissolve the injunction, etc., Stearns would ask the Court to vacate the consent order of the 18th of April, and declare the said injunction perpetual,

and direct that all the property mentioned in the suit be and remain in the hands of the receiver theretofore appointed, on an affidavit by Stearns therewith served. This motion and affidavit were served on counsel for Parrott and Sanchez at half past ten o'clock A. M. on the 3d of June. On the motion of plaintiff, before stated, the Court on that day ordered the whole matter to a hearing at two o'clock P. M. In the midst of such a rapid progress it was of course impossible for counsel for Sanchez and Parrott to do more than except to the action of the Court, which was done. The affidavit of Stearns, which was of course unanswered by Parrott, is very voluminous, and shows, or claims to show, that under the supervision of Sanchez the Parrott judgment had been paid off, or would be, by moneys already received by Sanchez, and to be thereafter received by him from sales about to be consummated, and that, the other creditors being willing to forbear further proceedings for the present, there was no occasion for further sales by Sanchez; but inasmuch as Sanchez's accounts for services, etc., were unsettled, the services of the receiver already appointed would be required. Upon this showing by Stearns, the Court on the same day made an order vacating the consent order of the 18th of April, and restoring the injunction and receiver, and directing Sanchez to deliver all the property in his possession to the receiver, and concluding with elaborate instructions to the receiver as to how he should proceed in the discharge of the duties of his position. It is from this order that the appeal is taken.

The bill seems to have been filed more for the benefit of Stearns than of the plaintiff. This is apparent from the circumstances of the case, and also from the fact that after the quarrel was initiated, Stearns, although a defendant, seems to have gone over to the enemy with all his forces, and thus given him whatever strength he may have possessed. Had the bill been filed by Stearns against Parrott to obtain an account and satisfaction of his judgment, on the claim that it had been paid in the mode agreed upon, there would have been form at least

and perhaps substance in it; but as it is, we are unable to perceive how the plaintiff is entitled to any relief. We are unable to perceive how he is to be injured by the course threatened by Parrott. If Parrott should sell property under his execution sufficient to satisfy the same, and at a sacrifice as apprehended by plaintiff, it by no means follows that there would not be enough left to satisfy his judgment, which is next in order; for by his own showing, Stearns is worth over five hundred thousand dollars, while his debts do not exceed one hundred and eighty-five thousand. Moreover, the plaintiff had an opportunity to bid at the sale and prevent a sacrifice of the property to his prejudice, and he does not inform us that he is not possessed of sufficient means to do so. But aside from all this, which really has nothing to do with the case, Parrott, so far as the plaintiff is concerned, had an undoubted right to sell under the execution unless for a sufficient consideration he had bound himself to the plaintiff not to do so, but to pursue some other course, to depart from which would result in some irreparable mischief to the plaintiff. Concede, for the sake of the argument, that he was so bound by virtue of the contract with Stearns. We do not undertake to say he was, but concede that he was. How stands the case then? Suppose Parrott is about to break his contract and do what he has agreed not to do, is there a case made for an injunction in favor of the plaintiff? Undoubtedly not. There is no pretense that Parrott is not fully able to respond in damages for any loss which the plaintiff might sustain. He could sustain no greater loss than the amount of his judgment, and that that amount could not be made out of Parrott by a suit at law is nowhere pretended. What occasion, then, has the plaintiff to go into equity for relief? Any rights which Stearns may be supposed to have are not before us. The last order, in keeping with the idea that the suit was brought for his benefit, was made at his request, it is true. But the petition or affidavit of Stearns and the order made thereon is entirely out of place in a suit by the present plaintiff. Stearns' remedy was by motion or suit to quash the Parrott execution in the

Court in which it issued. There the account could have been taken, and, if it appeared that Parrott had realized the amount of his judgment, further proceedings stayed and satisfaction entered. But, as already stated, we have nothing to do with Stearns. The only question with us is as to the rights of the plaintiff in the premises, and as to him, we think there are no equities in the bill for the reasons already stated.

The order appealed from is reversed, and the Court below is advised to dismiss the bill.